STATE OF TENNESSEE ex rel. D. W. MOULTON

*v.*

J. U. BURKHART et al.

370 S. W. 2d 411.

(*Knoxville,* September Term, 1962.)

(May Session, 1963.)

Opinion filed July 15, 1963.

S. Frank Fowler, Fowler, Rowntree & Fowler, Knoxville, for plaintiff in error.

Earl S. Ailor, Knoxville, Robert Sturdivant, Trabue, Minick, Sturdivant and Harbison, Nashville, for the State.

354

Mr. Chief Justice Burnett delivered the opinion of the Court.

This is a condemnation suit brought by the State under the provisions of Chapter 216 of the Public Acts of 1959 (now codified as secs. 23-1528 to 23-1541 et seq., T.C.A.). The suit was to acquire land for highway purposes. The defendants, Burkharts, are the owners of the land, while the appellant, Knoxville Concrete Pipe Company, Inc., is their lessee.

The petition averred that $114,863.00 was the amount to which the owners are entitled because of the taking and for incidental damages, etc. There was no separation of the respective values of the interests of the Burkharts and the Concrete Pipe Company. The statute (sec. 23-1530, T.C.A.) provides in part that, ''It shall not be necessary to specify the interest or claim of the several defendants * * *.'' Thus the condemnor complied with this statute in not separating the interests of these parties. The Concrete Pipe Company filed a motion in this cause in the alternative to dismiss the petition because the interests of the Pipe Company and the owners of the property were not separated. It alleged that it had been unable to get the owners' consent for a withdrawal of a specified amount. The alternative of this motion was that the petition be now amended so as to set out the separate interests of the parties. To this motion was attached an affidavit of the President of the Company that they had been informed by the State that the value as arrived at by their appraisers for the property taken from the Pipe Company was $104,393.00, and that the value as set out for the landowner's interest was $10,470.00, and thus on this affidavit it was requested that such a division be made and that they be allowed under

the statute by either Section 3 of the Act, which is codified as sec. 23-1530, T.C.A., or by Section 6 of the Act, codified as sec. 23-1533, T.C.A., to withdraw a sum of money thus allocated by the State's appraisers for their property as taken in this condemnation act. The Burkharts excepted to this allowance of $114,863.00 and prayed an appeal as provided for in sec. 23-1532, T.C.A.

This motion was argued before the trial court and the order overruling the motion, among other things, said: "upon agreement of the parties and the court to treat said defendant's motion as being an application for the payment of $104,393.00 to the said defendant by the Clerk out of the funds in his hands upon the statement of Petitioner's counsel that such payment was not opposed by Petitioner, and upon the statement of defendant Burkhart's counsel, on the other hand, that said payment was opposed by his clients upon the ground that the alleged allocation of funds was not acceptable and it might be prejudicial to his clients' interest at the trial, * * *." It was under such a situation that the trial court denied the motion of the petitioner, Knoxville Concrete Pipe Company, that this allocation, as claimed by them, be paid over to the Company under the statute either by sec. 23-1531 or by sec. 23-1533, T.C.A. In the first of these two Sections the property owner may file a statement that he is the owner and accepts the amount deposited as a full settlement and thereupon the money is paid to him. Alternatively, the property owner may accept the amount of the estimate of damages to him, request a trial and may nevertheless, by request to the Clerk in writing, compel payment to him of the amount of the sum deposited with the Clerk, under the agreement. However, if the final award does not amount to as much

as the sum deposited, a judgment may be entered against him for the difference.

The argument is that the ruling of the trial court here is controlled by *Moulton v. George,* 208 Tenn. 586, 348 S.W.2d 129, wherein this Court held that:

"The general legal doctrine as stated by the courts is that compensation must be paid for the land that is taken, regardless of the separate interests in the land, and that the sum of the separate values of the divided interests may not exceed the value of the whole." Orgel on Valuation under Eminent Domain, Vol. 1, 2nd Ed., page 461.

This statement of Orgel is exactly what we held in the George case and is supported by authorities from all over the United States, including the Supreme Court of the United States, as shown by Note 10, to the quotation from Orgel above quoted. What we held in the George case was stated in *Mayor & City Council of Baltimore v. Gamse & Bro.,* 132 Md. 290, 293, 104 A. 429, thus:

"In proceedings instituted to condemn the reversionary interest, as well as the leasehold interest, the rule is to ascertain the entire compensation to be allowed as though the entire title or estate in the property belonged to one person, and then [to] apportion the sum between the holders of the different interests, according to their respective rights."

Orgel, in his conclusions after discussing for some pages the reasonableness of this rule, says at page 479 of the same volume:

"In estimating compensation to owners for land held in divided ownership, the statute and the judicial de-

cisions usually require that compensation be first estimated in one gross amount and subsequently apportioned. These rules have their roots in reasons of judicial procedure and administrative policy, since they make for speedy condemnation and precision in forecasting the probable cost of acquisition."

■■ A very able argument is made in the brief in behalf of the plaintiff in error here that in a case of the kind where the value of the leasehold is many, many times greater than that of the value of the land, in long term leases and questions of that kind, we should re-evaluate the rule that has been established by *Moulton v. George*, supra, and clarify the question in cases similar to those as now before us. Upon a careful study by us of many decisions we find that in certain instances exceptions have been made to the general rule by courts of some of the States, particularly in Illinois and Pennsylvania, to situations of the kind now before us. The Court though adheres to the rule, as above announced, but makes exception in the particular type of case. Thus this seems reasonable when viewing the matter from every aspect—from the standpoint of the State as well as that of the property holder. Of course, this rule has long been the rule in every State as far as we know, as well as in the Federal Courts, and is that in condemnation suits the measure of damages is the market value of the property condemned.

But let us suppose that the fair market value of a certain piece of real estate sought to be condemned is of itself of a small value, but the property is leased by the owner as a site for a costly manufacturing plant, and is occupied and covered with valuable and complicated machinery, and that such machinery could not be removed

except at an expense greater than the value of the premises. Under such circumstances it certainly would not be held by the courts that the value of the premises was sufficient. This question of the removal of valuable machinery and things of that kind is probably covered by sec. 23-1414, T.C.A., where it is provided that the reasonable expense of such removal shall be considered in assessing incidental damages. Probably in the case now before us this was one of the reasons for arriving at the sum for the lessee of ten times more than that set as the value of the property for the owners, because the lessee did have all these things on the property. This, the removal of that machinery, is above the valuation of the property—it is an incidental damage. It is clearly the intent of our Constitution, as well as the Constitution of the United States, to fully compensate one for his property taken at its actual market value.

But after all the trial of these cases before a jury in simple language shows that the landowner proves the market value of the property taken, the lessee proves the value of his property and these two then are added together for the value of the whole, and then the jury apportions the amount they find from this whole to the lessee and the amount they find as the value of the property aside from this to the owner of the property or the lessor. In the long run it is a very simple matter. Of course, when you get into various and sundry short and long leases and different things of that kind there are different complicated questions that may arise as to the proof of the respective parties, claimed damages, etc., but this question does not concern us here, and our comment thereon is not necessary.

As quoted in the outset hereof the Legislature pro-

vided in filing these condemnation suits that it would not be necessary for the condemnor to specify the interests or claims of the respective parties. The reason for this provision of the statute, it seems to us, comes from this statement of the Circuit Court of Appeals of the United States in *Eagle Lake Improvement Co. v. U. S.*, 160 F.2d 182, thus:

"It becomes manifest that to uphold appellants' contention that separate valuation trials should be had would bring about confusion and injustice in condemnation cases. Separate trials would open the door to separate awards which might include valuation based on inconsistent uses of the property and consequently duplication of values."

Be this as it may, we have concluded herein that since these parties have agreed, and there is apparently no opposition thereto, that the statement made in the affidavit as to the value of this property taken from the Pipe Company was $104,000.00 plus this can be treated, and is treated, without contradiction as a fact shown in this case, and, since said order treats this motion and arguments of counsel before the court as an application for these funds, and, since the Pipe Company says in its assignments of error that "the appellant being then and now willing to accept said sum in full payment of its rights * * *", we think that this sum of money should be paid to the Pipe Company now, and it should not have to wait until a trial is held to determine the value of the owner's property which is left. This is the only correct and right thing to do under the equities and circumstances of the proposition, because the property was taken by the State on January 4, 1963, and, since they have it and there being no contest on that feature of the

proposition, it appears that the Pipe Company will be put to great expense in moving to another location.

It certainly was the clear intent of the Legislature in enacting this Act, Chapter 216, Public Acts of 1959, as here codified, to give the owner of property condemned under this Act the right to draw down this money under either of two alternate positions as indicated above. Giving this right had its very obvious reasons. One of the most obvious reasons is that a concern of this kind having to move immediately to another location at such an enormous cost it was clearly the thought of the Legislature to give them the right to take down such money. Of course, when the statute provided that they didn't have to separate the interests of the parties that is binding on us, but when it appears from the factual situation in the lawsuit that the interests have been separated by the condemnor, and values fixed as to these respective interests, then the court should interpret the meaning of the Legislature in allowing the owner to withdraw this money as applicable to the parties as they are situated in the instant case. This is clearly the right and fair thing to do under the circumstances. Then, too, this will simplify the trial of the case on the issue made up as to the exceptions of the property owner as to the value fixed for his property, and it is to the advantage of both the State and the property owner to have the lessee out of the way, because now there will only be a question of determining the damage to the owners of the property, that is the market value of the property taken without this lease on it. The property owners will be in the identical situation, or practically so, as they were in the case of *Chicago & N. W. R. Co. v. Chicago Mechanics' Institute*, 239 Ill. 197, 87 N.E. 933. In this

case the lessee sold their interest to the condemnor during the trial and the landlord, or owner of the property, appealed claiming that he had not received adequate compensation, the values he claimed there, etc. In other words, when the matter is settled, as we have determined under the factual situation shown here, it would be very much the same situation as it was in this Illinois case. In *Stapleton v. State ex rel. Spur Distributing Co.*, 195 Tenn. 144, 258 S.W.2d 736, the same result was reached. Of course, the statutes involved in the Stapleton case were entirely different, but the resulting trial of the condemnation case against the landowner will be identical as far as legal requirements are concerned.

Thus it is that an order may be entered herein that the Pipe Company accepts this sum of $104,393.00 under sec. 23-1531, T.C.A., as its damages, and all interest that it has shall be divested out of it to said property or its property rights, and the same shall be vested in the condemnor. When such order is thus drawn the Clerk will pay this sum to the Pipe Company pursuant to said statute. The costs of this appeal are adjudged against the condemnor.

█ The statute above referred to several times, sec. 23-1530, T.C.A., doesn't prohibit the condemnor from specifying the interests of claims of different defendants. It merely says that it shall not be necessary for him to do it. Thus it is, that when a claim is made to appear and it is not just a moiety or the interest of one tenant in common or things of that kind, but when it is entirely a separate interest, just as it is here merely to a part of the property, an entirely separate interest, and that does appear as to the amount that the State has fixed as to its valuation, then this valuation is acceptable

to that party who has no tie up with any other party and the interest isn't tied in together with others, clearly the Legislature under this Act intended that the money be paid to that party.

### On Petition for Rehearing

The State has filed herein a courteous, respectful and ·dignified petition to rehear.

This petition argues that the condemnor, or petitioner, opposed the payment to the lessee pipe company in full and final settlement of the amount as fixed as the value of the property by the petitioner's appraisers; and that our original opinion conflicts with the previous opinion of this Court in *Moulton v. George,* referred to in the original opinion; that the lessee pipe company had not made a request in this record to withdraw this sum in full but had filed exceptions to the allowance and would not comply with the statute in requesting to draw down the money and then have a trial on whether or not it had been sufficiently compensated under sec. 23-1533, T.C.A.; that we in our opinion had treated this case on an entirely different basis from that which it had been treated by the trial court; and that we were in error in judging the costs of the appeal against the petitioner.

■ In the first instance the petition argues that in their brief in the trial court they took certain positions while the lessee's counsel took other positions. The de- ·cree of the trial court, of course, is what governs us as to what happened there. On page 412 of the original opinion we quote a certain portion of the trial court's finding which is contrary to the argument now made that the condemnor opposed the payment of the amount fixed by the appraisers of the lessee as the value of the

property. On page 13 of the transcript, which is the order in this cause appealed from, the trial court found that "upon agreement of the parties and the court to treat said defendant's motion as being an application for the payment of $104,393.00 to the said defendant by the Clerk out of the funds in his hands upon the statement of Petitioner's counsel that such payment was not opposed by Petitioner, and upon the statement of defendant Burkhart's counsel, on the other hand, that said payment was opposed by his clients upon the ground that the alleged allocation of funds was not acceptable and it might be prejudicial to his clients' interest at the trial, * * *." Thus this order of the court clearly justifies and substantiates our conclusion of what this record shows. We have again read the record and are satisfied with our findings in the original opinion.

We expressly recognized the rule of *Moulton v. George* in our original opinion, and instead of disagreeing with it attempted by certain things said in this original opinion to fortify the rule as laid down in *Moulton v. George.* In the case now before us by reason of the factual situation as shown in this case we held that this relieved the rule as expressly approved and laid down in *Moulton v. George.*

It is true that the Pipe Company in its first petition did not specifically agree under the statute by a petition duly sworn to to accept this sum in full, but in view of what is quoted from the finding of the court above it is clear that the parties did agree that the State's appraisers had fixed this sum as the valuation of the property of the lessee, Pipe Company. Since this is true and the order of this Court is that they be allowed to take this down in full satisfaction of all damages, etc., due under

the Act, this clearly then complies with sec. 23-1531, T.C.A.; wherein they accepted it in full satisfaction as the entire damage thus there would be no reason for any other damage or other hearing and it effectually complies with this Code Section last referred to. It is conceded that the Pipe Company is the owner of the property in question. This obviates the affidavit required by sec. 23-1531, especially in view of the order of this Court.

■ We in *Catlett v. State*, 207 Tenn. 1, 336 S.W.2d 8, 337 S.W.2d 462, held that the various Sections of this Act, and other Sections relating to eminent domain, are all construed in *pari materia*. We confirm that holding and see no earthly reason why Code Sections 23-1531 to 23-1533, inclusive, cannot and should not be construed together so that even if the lessee Pipe Company and the land owner filed different exceptions they may not later on, if they so choose, apply for and receive payment in full under sec. 23-1531 as specifically ordered by the original opinion in this case.

We do not by the opinion in this case hold that separate appraisals must be made in instances of the kind. What we held was that since the record in this case showed that such a separate appraisal had been made that reason, logic and equity demand that the parties thereto might accept such a figure in full satisfaction of their claim under sec. 23-1531, T.C.A. Of course, we recognized in the original opinion herein that where there are various moieties or interests in property sought to be condemned that complications might result and different parts might not be paid out under such circumstances, but what we held was that in the instant case under a lessee and lessor agreement where the State had fixed the value of the property there was no reason why it

shouldn't be paid to them. If the State decides to take a piece of property of this kind where there is a lessor and lessee interest and arrives at a figure with either the lessor or the lessee as to the value of what their interest is then they could buy this interest or pay for it or follow the condemnation statute under sec. 23-1531 and eliminate that interest so if the other interest does not agree then this could be tried as ordered herein. In *Catlett v. State,* supra, we said with reference to our construction of this entire condemnation Act:

"It permits him immediately to take down this sum of money without losing any rights whatsoever to appeal and attempt to establish a greater valuation, or he may accept this amount if he is satisfied with it. We think it an excellent provision in the Act, and can in no way see where it injures the landowner, but on the contrary is to his benefit."

The quotation from the decree of the trial court in this case clearly shows that the only person who opposed the payment to the lessee Pipe Company was the lessor, Burkhart, because "it might be prejudicial to his clients' interest at the trial." We can see no harm to Burkhart in allowing the payment made here. The making of the payment of what the State establishes as the lessee's value of this property would not in any respect limit or restrict the lessor, Burkhart, in showing the value of his interest or of the property involved at the trial.

There is also an argument made here that the lessee Pipe Company should not be allowed to withdraw this full settlement because they excepted to the allowance and prayed an appeal for trial before a jury. The record shows that this exception was filed some days

subsequent to their petition and on the last day within which it could be filed under sec. 23-1532, T.C.A. Obviously, of course, since the Pipe Company had not been able to work out its proposition with the State or otherwise it was necessary for them to preserve their rights by filing such a formal exception. The filing of this exception though in no wise can prejudice their rights to accept what the State has placed as the valuation on the property taken from them at any time they see fit. This statement is made because we think that this is the purpose of this condemnation statute which is to encourage early settlements of these condemnation suits and when agreements are made upon the basis of the State's estimate of value this clearly avoids expense of protracted litigation.

We see no reason to retract our holding as set forth in the original opinion herein or to change the order in reference to the taxation of the costs of the appeal. This appeal was opposed by the State and able and vigorous argument made against it. The lessor, as far as we know and as far as this record shows, did not oppose the appeal. In view of our determination of the questions herein we think that we properly taxed the costs of the appeal against the State in this cause. Where the condemnee accepts the valuation in full as fixed by the condemnor under sec. 23-1531 the condemnor pays the costs. Code Section 23-1539 does not apply under such circumstances.

For the reasons expressed herein the petition to rehear must be overruled.